Our last case this morning is Software v. Apple and Motorola Mobility 2023-10-06 and 10-08. Mr. Burnett again. May it please the court. This case presents issues of first impression, including considerations of applicants admitted prior art in inter-parties re-examination and whether a board in effectively substituting itself on behalf of a third party requester may enter or adopt a new ground of rejection under 37 CFR section 41.77 comprising a repackaged version of a ground proposed by the three-part that was properly not adopted by the examiner as barred under 37 CFR 41.67 C-1-6. In addition, in view of the board's rejections wholly lacking substantial evidence, the appellee's attempt to introduce evidence the board did not cite in its decisions and asserts positions and justifications that were not taken by the board. That evidence and counsel's post hoc rationalizations for agency action cannot be considered in this appeal under Chenery, Burlington, Truck Lines, and other cases. So first I'd like to briefly address the APA, APA, Applicant Submitted Prior Art. The grounds for rejection in an inter-party re-examination do not include Applicant Submitted Prior Art, which is not a printed publication, as this court held in a similar case involving use of an Applicant Submitted Prior Art in an IPA. In that case it was Quantum Inc. versus Apple Inc. I said parties prior art consistent with patents or printed publications under 311B such that it may form the basis of a ground in your party's review. How about the other ground of rejection? Okay, the HTML 4.0? Okay, so one more brief comment about AAPA. The AAPA is a Mazzone rendering engine, which is source code, which is not a printed publication. That should end the inquiry right there. But a reference or a prior art, something in the prior art can be used as background without it being technically a reference. I understand that here the board at one point at least specifically identified Mazzone as a reference. So that seems to cut against them. It actually identified it as being a base. Wouldn't it be sufficient if they were to characterize it unambiguously as background information and not use it as a reference? They could characterize it as background information, but they... Their new grounds, they said it's the basis. You would have to use it as a basis. So switching to HTML 4.0 and CSS... But you would agree that they could characterize it. If they characterized it and used it as the background information, that would be fine, right? They could do so. I'm not sure exactly what they would use for it, but regardless, that's not what they did. So moving forward to the second new ground, HTML 4. Okay, so they proposed that claims directed to preserving layout aspects relating to cascading style sheets, CSS, is taught by the HTML 4.0 specification. So the HTML 4.0 specification, which is Volume B, and it is 370-odd pages, or excuse me, 350 pages, including the glossary at the end. And there is a section, Section 14, called Style Sheets. And it discusses style sheets, does not provide any information on how style sheets are implemented. Style sheets, the specifications for implementing style sheets are separate specifications. And those are in Appendix VI-6. And they include CSS1 and CSS2. CSS2 is much more comprehensive than CSS1. There are certain tags in HTML 4 that require CSS2, which are related to tables. Also, their soft use position is that nobody, even great skill in the art, can implement CSS, or claims requiring preservation of CSS aspects of the code based on the HTML 4 specification. And this issue has already been before the court in an ex parte re-examination where claims 29 were found patentable over the art. And in fact, under that case, it's a 994 ex parte re-examination. The board reversed the examiner on claim 29 based on evidence that was provided in the declaration by Wolf Scott Collins. And in this re-examination and declaration provided by Wolf, and now I'm referring to the gray brief, page 26, and the rebuttal brief referencing Wolf, and this is at Appendix 2254 through 2255, Wolf asserted, Al-Fasida in 2000-2001 could not have modified Pad++ to implement the numerous unsupported HTML elements to produce an HTML 3.2 browser, much less an HTML 4 slash 4.01 browser. Al-Fasida in 2000-2001 would also not attempt to write original code to support HTML4, CSS1, or CSS2. And there would be no chance that such an attempt would have succeeded without undue experimentation. It took a team of highly skilled developers and software engineers 50 plus man years to develop the first version of GACL, that's the code name for Mozilla's rendering engine, that was released in a commercial web browser, Netscape Navigator 6, November 2000. And as Wolf alluded to in an Ars Technical article, it would have been insane for Apple to have written a rendering engine from scratch. And Softview argues that there is no evidence whatsoever on the record that Al-Fasida could have taken the HTML4 specification and modified the browser in that Pad++ had and would have had any motivation to do so, would have had any reasonable expectation of success. Also, the PDAs of record are in the PA communicator, a Palm 7 and an Apple Newton, and those have wholly insufficient memory to even put the operating system you need for Pad++, which would be Linux or Unix, just by itself, and now you're talking about adding a rendering engine that's supporting HTML4 and at least some level CSS because the claims require CSS. It's just not rational, there's no evidence of record that the board points to to support its conclusion that this could be done, merely that it suggests that we can do this so Al-Fasida could do it. I'd like to move on to Claims 64 and 66. Briefly, part of the argument here is that the examiner and the board show evidence in this Tor document, which is a web page, that shows a zoomed-out view and a zoomed-in view. In particular, those views are shown on pages 76 and 77. Now, the way Pad++ worked is that you press down a middle button, or I think it's the right button, you press down to zoom in, and the zoom would interactively zoom in until you see, oh, I've zoomed in how much I want, and then it stops. There's no evidence of this being done in response to tapping, and the examiner's not indicated that it's done in response to tapping. In fact, the examiner argues that the claim isn't limited to only tapping, and Safi argues otherwise, that it is in response to tapping that it has to do the zoom. You can't do manual zooming after the tapping application and meet the claims. Now, another thing that the board argues is that because the claims don't specify, don't have the words bounding box in the claims, that somehow this could be implemented without a bounding box for a column or a paragraph. Fundamental to any graphical user interface is you need a bounding box for all the input objects or items that you're going to interface with. Otherwise, the system doesn't know what it is that you're tapping on. You need a bounding box. They don't explain how you could do it without it, and there's no argument that Pad++ couldn't interpret columns. As Safi presented, the way Pad++ handled paragraphs is it would take a paragraph and it would start creating individual text items one line at a time, so it never created a bounding box for a paragraph. You're about to get into your rebuttal time. You can continue or save it as you wish. I'll save it. Mr. Zagdaia, was it? Yes. Thank you, Your Honor. And may it please the court, this is Safi's third attempt at this court to defend the claims of the 926 patent. But Safi's arguments have no more merit than those that this court rejected in 2015 and 2021. There's no single issue with which Safi can secure reversal or remand. Instead, Safi's appeal fails for multiple independent reasons. For example, Rule 42.73 estoppel allows this court to affirm the board on all claims without reaching any other issue. And even putting aside regulatory estoppel, the court still doesn't need to reach many of Safi's arguments. For example, Safi's challenge to the board's new ground to rejection is essentially factual. And Safi has not shown the new ground to rejection to lack substantial evidence by affirming on new ground. This is the HTML. That's correct. By affirming on new ground to the court need not reach any of Safi's new ground one arguments, including Safi's admitted prior art challenge. The court should similarly reject Safi's fact-bound challenge regarding claims 64 and 66 because substantial evidence supports the board's rejection of those claims. Regarding new ground two, Safi takes issue with the board's factual findings pertaining to Pad++ and the HTML4 standard. But the board explained at Appendix 38 that in a single printed publication, the HTML4 standard provides information with respect to both HTML documents and the improvement of HTML document appearance using cascading style sheets. The board similarly explained at Appendix 39 that because Pad++ describes itself as an HTML browser and the HTML4 standard relates to the same markup language, the reference's teachings are compatible, such that a person of skill in the art would have had a reasonable expectation of success in combining them. The board therefore had substantial evidence from which to find claims 29 and 78 unpatentable. Unless the board has any questions. We're not the board. Sorry. Unless the court has any questions, appellees Apple and Motorola respectfully request that this court affirm the board. No one ever loses points for not using up all their time. But you do lose points for calling us the board. Apologies, Your Honor. I should have done better. Thank you. It's my, it's my first time. Mr. Barnett has some rebuttal time. First, regarding CFR 42.73 D3I, this was argued extensively in the oral hearing for these two, for the appeals for this particular appeal here. And in during the those oral hearings, the board was hinting, hey, we're going to go. We're going to apply this here. Soft, you presented information, evidence of why it doesn't apply. The board ultimately didn't apply it. So what's already considered said it's not there. It was also not raised on cross appeal to this court. So it's not applicable and it wasn't raised by appellees. Second, with respect to HTML 4, first of all, HTML, there was never a standard HTML 1.0. When Pad++ with Ben Peterson and his cohorts working on Pad++, at that same time, HTML 2.0 was being developed by Netscape and by Microsoft. And then in August of 1995, it was the first HTML standard to issue. Pad++ by 1998 didn't even approximate supporting HTML 2.0. And in 1998, Ben Peterson acknowledged the abandoned using the Pad++ browser because the web had advanced greatly between 1995 and 1998. And they didn't want to compete with the browser companies such as Netscape and Microsoft. Also, the difference in terms of what would be necessary to implement HTML 4 and with CSS, you've got to have at least CSS 1 in there for the claim. Pad++ had 5,000 lines of code. Mozilla's rendering engine had on the order of a million lines of code. Mozilla, as testified by Wolf, took 50 plus man years to implement this. Microsoft had just even worse problems implementing the CSS box model, which is fundamental to CSS, as documented on the Wikipedia page that's cited in the briefs. Whereas they couldn't even get the box model to work until probably the first version they had it working right was in Internet Explorer 6.0 in August of 2001. But they had great difficulties as well. And Safi argues that there's no evidence whatsoever, no substantial evidence that a person of ordinary skill in the art at the time of the invention could have looked at the HTML 4.0 specification, could have looked at the Pad++ references, and could have implemented on a mobile device a browser that supported HTML 4 and at least CSS 1 as the claims require CSS. I finally want to note that the CSS in the claims is cascading stylesheets per CSS 1 and CSS 2. It's not just something that is a cascading stylesheet. Counsel, as you can see, your time has expired, and we will take the case under submission. That concludes today's audience.